## Moninger's Petition.

Russell Z. Moninger and D. M. McCloskey, for petitioner.

Adolph L. Zeman, contra.

BROWNSON, P. J., Feb. 3, 1930.—Grant Moninger filed a petition, setting forth that he is the holder of a deed of the county treasurer, dated June 30, 1924, and duly recorded, conveying to him, in pursuance of a delinquent tax sale, certain real estate; that said property was not redeemed within the two-year redemption period allowed by law; that Mary Iacovitti is in possession of the property, and upon diligent inquiry, no claimant of any right, title, etc., other than her and her husband had been found; praying for a rule to show cause why petitioner's title to said property should not be adjudicated and decreed to be valid and indefeasible. A rule upon Mrs. Iacovitti and her husband, and all other persons claiming title, etc., was thereupon awarded in the form provided for by section 1 of the Act of July 18, 1917, as amended by the Act of May 31, 1923, P. L. 477.

The rule having been served upon Mary Iacovitti and her husband, the former has presented preliminary objections to the proceeding for the purpose of raising, under the Act of March 5, 1925, P. L. 23, the question of the jurisdiction of the court to entertain Moninger's petition for an adjudication against her upon the title. The ground of objection is that the petition, showing upon its face that she is in possession claiming title, Moninger's remedy is to sue her in ejectment—the intent and effect of the statute under which his petition was filed being to give the remedy which it provides only to a purchaser who is in possession. The case is now before the court upon these preliminary objections.

The statute in question (Act of July 18, 1917, P. L. 1072, the 1st section of which was amended twice in 1923, the final amendment being on May 31, 1923, P. L. 477) is entitled "An act providing a method of establishing title to land acquired at a sale for unpaid taxes." It provides that "in all cases" where land has been or shall be sold for taxes, the purchaser or his successor in title may petition for a rule to show cause why his title shall not be adjudicated and decreed valid and indefeasible as against all rights or claims whatsoever.

There is nothing in the title or in the body of the act expressly limiting the operation of the phrase "in all cases" to cases in which the purchaser has been yielded and is in possession of the land. It is contended that this is the general intent of the statute. But we do not find anything in it that affirmatively manifests an intention that the meaning and operation of the quoted phrase shall so be qualified and restrained, and we observe in it several features which tend to indicate that the words stating by whom and in what cases the remedy provided by the act may be petitioned for were intended to mean just what on their face they purport to say.

In the first place, the act provides for the granting of a rule upon "the persons named in the petition," and all others having or claiming any right, title, etc., and the persons who are required to be named in the petition are "the former owners, reputed owners, persons in possession, or any other person having or claiming to have a right to, interest in or claim against said land, if any there be." The "persons named in the petition," who are to be made respondents in the rule, would, therefore, appear to be intended to embrace any person or persons in possession claiming a right, title or interest in the land adversely to the petitioner. The language used not only is consistent with the idea that a purchaser who has not yet obtained possession may be a petitioner, but seems to contain affirmative indications that this is the intent of the statute. Then, section 2 contains a provision that if any person or persons shall appear and answer the petition, the court shall order that such person or persons shall "begin proceedings" to establish his or their title or interest or claim within thirty days thereafter. If the intent of the act had been that the purchaser must be in possession, and those claiming adversely to him out of possession, the natural expression to use would have been "bring ejectment," whereas it is the comprehensive phrase "begin proceedings" that is used, and this embraces every appropriate proceeding, whatever the facts as to possession may be. Thus, if the answering claimant be out of possession, he may, within the thirty days, begin an ejectment, while if he be in possession and there is a controversy as to the facts upon which the dispute as to title and right of possession turns, he may within the period begin a proceeding under the Act of June 10, 1893, P. L. 415, for the purpose of bringing on an issue wherein the disputed title may be determined and settled by a jury trial. This comprehensive form of words was apparently used intentionally, so that it would be applicable and would fit the case, whoever might be in possession.

That the Act of 1917 was intended neither to provide a remedy merely for cases as to which none already existed, nor to substitute a new remedy for any existing one, appears by section 4, which declares that the remedy provided for by it "is not intended as an exclusive method of establishing title to land acquired at a sale thereof for unpaid taxes." The evident intention of the statute was, without interfering with any existing remedy of any party, to promote the salability of lands at tax sales by giving to the purchaser a new and additional remedy, whereby he could, in one proceeding, bring in all adverse claimants, and have the validity of the tax title adjudicated therein as against them all, or, should any of them advance claims of such nature as to necessitate a jury trial, could force all such claimants at once into the appropriate proceeding to bring on such trials.

We think the intent manifested by the act as a whole is that the remedy which it gives to the purchaser shall co-exist with all other remedies he may have for the purpose of establishing his title, and that the fact of its appearing in Moninger's petition that Mrs. Iacovitti is now in possession, so that

the petitioner could at this time bring ejectment against her, does not interfere with the jurisdiction of the court to entertain the petition.

It is argued that to give the statute this construction would render a possessor subject to being forced to litigate his title, with which he may be perfectly satisfied, at the beck and call of an outsider, and to being "constantly harassed by persons out of possession, who under one claim or another might force the owner to institute action to protect and maintain his title." But this argument is inapplicable to this statute, for under it the petitioner has no standing whatsoever unless he is the holder of a tax-sale deed which upon its face appears to invest him with the ownership of the property. When he has thus presented to the court a *prima facie* case of title in himself, it is not unreasonable that the adverse claimant, although in possession, should be required by rule to come into court, to the end that the conflicting claims of title may lawfully be determined.

And now, Feb. 3, 1930, the question of the jurisdiction of the court, raised by the preliminary objections filed by Mary Iacovitti, is decided against her, and said preliminary objections are overruled, and leave is granted to her to answer to the merits of the petition within twenty days from this date.

From Harry D. Hamilton, Washington, Pa.